UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA MANSFIELD,<br><br>                          Plaintiff,<br><br>         v.<br><br>DAWN JONES PFAFF, et al.,<br><br>                          Defendants. | CASE NO. C14-0948JLR<br><br>ORDER ON MOTION TO AMEND |

Before the court is Plaintiff Pamela Mansfield's motion for leave to amend her complaint. (Mot. (Dkt. # 15).) Ms. Mansfield asks for the court's permission to file a second amended complaint replacing her first amended complaint. (*See id.*) The second amended complaint alters certain key aspects of Ms. Mansfield's claims either in response to or in anticipation of a motion to dismiss filed on the same day as the motion to amend. (*See* Dkt.) The court has considered the submissions of the parties, the governing law, and the record in this case. Having done so, and considering itself fully advised, the court GRANTS Ms. Mansfield's motion.

ORDER- 1

## I.   BACKGROUND

This case began as a dispute between co-workers but has now blossomed into a federal court lawsuit. Plaintiff Ms. Mansfield is a registered nurse who was employed by the University of Washington ("UW"). (1st Am. Compl. ¶ 1.) She began working for UW in 1994 and eventually advanced to the position of Research-Nurse-2. (*Id.* ¶ 10.) In 2007, she was appointed to a lead position assisting Dr. Jerry Palmer with several grant-funded diabetes prevention and treatment studies. (*Id.*) Dr. Palmer and his research team conducted those studies at the Seattle office of the United States Department of Veteran's Affairs ("VA"). (*Id.*) As such, Dr. Palmer and his team, including Ms. Mansfield, were required to, at least nominally, be appointed as volunteer employees of the VA, even though their salaries were all paid either by UW or by the Seattle Institute for Biomedical and Clinical Research ("SIBCR"). (Resp. (Dkt. # 18) at 2-3.)

Dr. Palmer's research team was rounded out by an administrative aid, a lab technician, and a lab supervisor. All of them are now defendants in this lawsuit. (*See generally* 1st Am. Compl.) The administrative aid, Dawn Jones Pfaff, was an SIBCR employee who was assigned to the team. (*Id.* ¶ 4.) She was supervised by both Dr. Palmer and Ms. Mansfield. (*Id.* ¶¶ 4, 10.) The lab technician, Jessica Reichow, was a UW employee assigned to work with Dr. Palmer. (*Id.* ¶ 6.) The lab supervisor, Barbara Brooks Worrell, has a PhD and was Ms. Mansfield's supervisor with respect to lab work. (*Id.* ¶ 7.) She had design and implementation authority over Dr. Palmer's team in connection with research studies funded by grants from the National Institutes of Health.

(*Id.*) Together, these five worked at the VA to research and treat diabetes patients. (*See id.* ¶ 10.)

Over time, certain relationships within the team soured. In particular, and most relevant to this lawsuit, Ms. Mansfield and Ms. Pfaff grew to dislike one another. It is unclear to the court exactly what sparked this mutual dislike, but it is evident that with time it became rather pronounced. To begin, Ms. Mansfield took exception to a number of Ms. Pfaff's clinical practices. (*Id.* ¶ 12.) For example, Ms. Mansfield alleges that Ms. Pfaff publicized patients' private medical histories (*id.* ¶¶ 12B-C), prepared doses of prescription medicine without a health care license (*id.* ¶ 12E), and scheduled a child for an appointment at an adults-only clinic (*id.* ¶ 12I). Ms. Mansfield makes similar allegations against other members of the team, and alleges that she publicized those allegations at various times. (*Id.* ¶ 12.)

However, the dispute between Ms. Mansfield and Ms. Pfaff clearly took on a personal dimension as well. (*See id.* ¶¶ 13-22.) Ms. Mansfield alleges that Ms. Pfaff physically attacked Ms. Mansfield in 2011, repeatedly slamming her head into her desk then fleeing down a stairwell "as a good Samaritan tried to stop her for questioning." (*Id.* ¶ 19.) She further alleges that Ms. Pfaff attempted to cover up this attack by orchestrating an effort by the Palmer research team to "furnish coordinated round-table testimony." (*Id.*) She alleges that this testimony not only attempted to absolve Ms. Pfaff of any blame for the attack, but also tried to portray Ms. Mansfield as mentally unstable, an illegal drug distributor, and a violent threat. (*Id.*) The VA police officer who

ORDER- 3

investigated the incident concluded that Ms. Mansfield falsified her injury report, concluding that the alleged attack never happened. (*Id.* ¶ 20.)

As a result of these incidents, Ms. Mansfield lost her job. VA officials concluded that Ms. Mansfield could not be trusted with access to a federal facility in light of her falsified injury report. (*Id.* ¶ 20.) This, in turn, caused UW to terminate Ms. Mansfield's employment. (*Id.*) A UW employee named Mara Fletcher reviewed Ms. Mansfield's file, including her reports of abuses by the Palmer research team, and "executed UW's authorization" to terminate her UW employment. (*Id.* ¶ 8, 21.) Ms. Fletcher is now a defendant in this lawsuit as well. (*Id.* ¶ 8.)

Several years later, the dispute migrated from the halls of the VA office to the court system. In 2013, Ms. Mansfield filed a complaint in King County Superior Court. Her original complaint alleged only a single cause of action for wrongful interference with contract against Ms. Pfaff. However, she amended her original complaint in state court, adding the rest of the Palmer research team as defendants as well as UW and SIBCR.[1] (*See generally* 1st Am. Compl.) In addition, she introduced new causes of action for negligent infliction of emotional distress, negligent supervision and retention, civil conspiracy, and First Amendment violations under 28 U.S.C. § 1983. (1st Am. Compl. ¶¶ 27-37.) The action was then removed to federal court where, on July 17,

---

[1] SIBCR has subsequently been dismissed from this action. (*See* Dkt. # 11.)

ORDER- 4

2014, newly-substituted defendant the United States of America[2] filed a motion to dismiss and Ms. Mansfield moved to amend her complaint. (*See* Dkt. ## 14-15.) Ms. Mansfield's motion is now before the court.

## II. ANALYSIS

### A. Proposed Amendments

Ms. Mansfield proposes a handful of amendments to her complaint. (*See* Proposed 2d Am. Compl. (Dkt. # 15-2).) She adds a single defendant, acknowledges that the United States is now at least partially a defendant in this matter, removes her cause of action for negligent supervision and retention, and makes several other relatively minor changes of this nature. (*See id.*) More importantly, she alleges that much of the conduct forming the basis of her claims took place outside the scope of Defendants' employment with the VA. (*See, e.g., id.* ¶¶ 24, 28.) Defendants oppose these amendments. (*See* Resp.)

### B. Law Governing Motions to Amend

Federal Rule of Civil Procedure 15(a) provides that, after an initial period for amendments as of right,[3] pleadings may be amended only with the opposing party's

---

[2] The United States was substituted for certain defendants pursuant to 28 U.S.C. § 2679(d)(2) following certification that those defendants were acting in the scope of their federal employment when they committed the torts alleged by Ms. Mansfield. (*See* Dkt. ## 3, 13.)

[3] Ms. Mansfield argues that she is permitted to amend as a matter of right (*see* Mot. at 4), whereas Defendants argue that she may not, and must seek leave of court because she already amended as a matter of right in state court (*see* Resp. at 5-6 (citing *Howell v. City of Fresno*, No. CV-F-07-371 OWW/TAG, 2007 WL 1501844, at *2 (E.D. Cal. May 23, 2007))). The court finds this question immaterial in light of its decision to grant leave to amend.

written consent or by leave of the court. Fed. R. Civ. P. 15(a). Generally, "the court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule should be interpreted and applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Federal policy favors freely allowing amendment so that cases may be decided on their merits. *See Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997).

The court ordinarily considers five factors when determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment," and (5) whether the pleadings have previously been amended. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The court need not consider all of these factors in each case. *Atkins v. Astrue*, No. C 10-0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011). The third factor, however, prejudice to the opposing party, is the "touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ; *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988). With these points in mind, the court analyzes each of the relevant factors.

## C. The Five Factors

### 1. Bad Faith

The first factor is bad faith. In the context of a motion for leave to amend, "bad faith" means acting with intent to deceive, harass, mislead, delay, or disrupt. *Cf. Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *cf. In re Ezzell*, 438 B.R. 108, 117-18 (Bkrtcy. S.D. Tex. 2010). As it has been defined in other contexts, "bad faith" means more than acting with bad judgment or negligence, but "rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003).

Here, this factor favors allowing amendment. There is nothing in the record to suggest that Ms. Mansfield is acting in bad faith. There is no evidence of "conscious doing of a wrong . . . , dishonest purpose or moral obliquity . . . , [or] furtive design or ill will." *See id.* It is true that Ms. Mansfield filed her motion to amend on the same day the United States filed its motion to dismiss (*see* Dkt.), and in many ways the changes proposed in her motion appear to respond to the concerns raised by the motion to dismiss. However, this alone does not demonstrate anything approaching bad faith. *See id.* This is particularly true in light of the fact that the court must indulge all inferences in favor of allowing amendment and must therefore impute benign motives to Ms. Mansfield where, as here, it is plausible to do so. *Griggs*, 170 F.3d at 880.

2. Undue Delay

The second factor is undue delay. "Undue delay" is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court. *Davis v. Powell*, --- F. Supp. 2d ----, 2012 WL 4754688, at *9 (S.D. Cal. 2012). In assessing whether there is undue delay, it is not sufficient merely to ask whether the motion to amend complies with the court's scheduling order. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Instead, a district court must inquire whether the moving party knew or should have known the facts and theories raised by the amendment at the time of the original pleading, *id.*, although the fact that a party could have amended a complaint earlier does not in itself constitute an adequate basis for denying leave to amend. *Howey v. United States,* 481 F.2d 1187, 1191 (9th Cir. 1973). Whether there has been "undue delay" should be considered in the context of (1) the length of the delay measured from the time the moving party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991).

This factor also favors allowing amendment. There has been virtually no delay in bringing this motion to amend, discovery has not even begun, and the trial date is nowhere in sight. Further, the court can discern no prejudice to Defendants or unwarranted burdens on the court that would result from any supposed delay. Indeed, at this stage, there would be no dispute that Ms. Mansfield could amend as a matter of right if she had not previously amended once before in state court.

### 3. Prejudice to the Opposing Party

The next factor is prejudice. "Prejudice," in the context of a motion to amend, means "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party." *Deakyne v. Cmmsrs. of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969); *Amersham Pharacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000). The prejudice inquiry carries the "greatest weight" among the five factors. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Even so, "[t]he party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 186. The non-moving party must do more than merely assert prejudice; "'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). As a corollary, delay alone is not sufficient to establish prejudice, nor is a need for additional discovery. *Amersham*, 190 F.R.D. at 648; *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997). To justify denying leave to amend, the prejudice to the non-moving party must be "substantial." *Morongo Band*, 893 F.2d at 1079.

This factor likewise favors allowing amendment. Defendants have the burden to demonstrate prejudice, *DCD Programs*, 833 F.2d at 187; *Richardson*, 841 F.2d at 999, and have not carried that burden. Defendants have made no plausible assertion of prejudice, choosing instead to ignore this factor and focus on futility. (*See* Resp.) Moreover, the court can discern no potential for prejudice other than the fact that Defendants will be required to submit an amended Answer and the United States may

need to withdraw its pending motion to dismiss. This is not enough. To show prejudice, Defendants must "show that [they were] unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely.'" *Bechtel*, 886 F.2d at 652. The prejudice must be "substantial." *Morongo Band*, 893 F.2d at 1079. Neither of these standards is met in this case, so this factor favors allowing amendment.

    4. Futility of Amendment

The fourth factor is whether amendment would be futile. A court may deny leave to amend if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). For purposes of this analysis, an amendment is "futile" if it is clear that the complaint could not be saved by amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Specifically, the court must determine whether the deficiencies in the pleadings "can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id.* (quotation marks omitted). "A party should be afforded an opportunity to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended pleading would be subject to dismissal." *Mahone v. Pierce Cnty.*, No. C10-5847 RLB/KLS, 2011 WL 2009740, at *2 (W.D. Wash. May 23, 2011) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 629 (9th Cir. 1991)).

This factor is neutral at best and slightly favors allowing amendment. Defendants focus most of their briefing on this factor. (*See* Resp. at 6-13.) However, most of their

ORDER- 10

arguments on this topic are unpersuasive and none of them convince the court that it would be futile to permit amendment here. Defendants argue that the proposed amended complaint does not allege claims that are "plausible" as required by the United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Resp. at 6-7.) The court has examined the amended complaint and disagrees. The complaint contains a substantial amount of factual specificity, describing both claims and factual allegations in detail. (*See* 2d Am. Compl.) And although the complaint does not separately allege each fact necessary to prove each of Ms. Mansfield's claims, it does not need to. Rather, it need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Ms. Mansfield's amended complaint meets this standard. Defendants also argue that the proposed amended complaint is defective because it uses the conjunction "and/or" in places. The court disagrees. The use of "and/or" is not confusing in the context of the complaint and raises no concern for the court. It does not demonstrate that Ms. Mansfield's claims are not plausible or that amendment is otherwise futile.

Perhaps more importantly, Defendants do not meet the standard for "futility" applicable at this stage of the proceedings. At this stage, amendment is only "futile" if it is clear that the complaint could not be saved by amendment. *Corinthian Colleges*, 655 F.3d at 995. Specifically, the court must determine whether the deficiencies in the pleadings "can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id.*

ORDER- 11

(quotation marks omitted). Defendants do not contend that amendment is futile in this sense, only that Ms. Mansfield should draft yet another complaint that provides more factual specificity. Accordingly, Defendants have not met their burden of demonstrating futility.

### 5. Whether the Pleadings Have Previously Been Amended

Last, a court may consider whether the moving party has had previous opportunities to amend its pleadings. A district court's discretion to deny amendment is especially broad when the court has already given a plaintiff one or more opportunities to amend. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *Mir. v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980).

This factor is neutral here. Ms. Mansfield has had a previous opportunity to amend her complaint in state court, but she has not had an opportunity to amend in federal court. This is relevant here because the pleading standards in state court and federal court are different, and most of Defendants' objections to amendment focus on the *Iqbal* and *Twombly* standards applicable only in federal court. (*See* Resp.) However, the court is nevertheless mindful of the fact that this is the second time Plaintiff has been permitted to amend, and accordingly considers this factor to be neutral.

### III. CONCLUSION

On balance, the factors considered above favor allowing amendment. Accordingly, the court GRANTS Ms. Mansfield's motion to amend (Dkt. # 15). The court notes also that this ruling may have some effect on the United States' motion to dismiss (Dkt. # 14), given that the subject matter of the two motions overlaps

considerably. Accordingly, the court ORDERS the United States to inform the court by Tuesday, August 5, 2014, whether it still seeks a ruling on its pending motion to dismiss or whether it instead wishes to withdraw that motion without prejudice to refiling a revised motion at a later time.

Dated this 1st day of August, 2014.

_____
JAMES L. ROBART
United States District Judge

ORDER- 13