UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAMELA MANSFIELD,<br><br>        Plaintiff,<br><br>    v.<br><br>DAWN JONES PFAFF, et al.,<br><br>        Defendants. | CASE NO. C14-0948JLR<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Plaintiff Pamela Mansfield's motion for partial summary judgment. (Mot. (Dkt. # 20).) Ms. Mansfield asks the court to apply the doctrine of collateral estoppel to decide certain key factual issues in this case. (*See id.*) She claims that the collateral estoppel doctrine bars relitigation of factual issues that were already decided once before in a Washington State administrative tribunal. (*See id.*) The court has examined the submissions of the parties, the governing law, and the record, and concludes that the collateral estoppel doctrine does not apply here because the parties and

ORDER- 1

1   issues are different than in the previous proceeding. Accordingly, and because there are
2   genuine issues of material fact, the court DENIES Ms. Mansfield's motion for partial
3   summary judgment.

4   ## II.   BACKGROUND

5   This case began as a dispute between co-workers but has now blossomed into a
6   federal court lawsuit. Plaintiff Ms. Mansfield is a registered nurse who was employed by
7   the University of Washington ("UW"). (1st Am. Compl. (Dkt. # 1-2) ¶ 1.) She began
8   working for UW in 1994 and eventually advanced to the position of Research-Nurse-2.
9   (*Id.* ¶ 10.) In 2007, she was appointed to a lead position assisting Dr. Jerry Palmer with
10  several grant-funded diabetes prevention and treatment studies. (*Id.*) Dr. Palmer and his
11  research team conducted those studies at the Seattle office of the United States
12  Department of Veteran's Affairs ("VA"). (*Id.*) As such, Dr. Palmer and his team,
13  including Ms. Mansfield, were required to, at least nominally, be appointed as volunteer
14  employees of the VA, even though their salaries were all paid either by UW or by the
15  Seattle Institute for Biomedical and Clinical Research ("SIBCR"). (Resp. (Dkt. # 18) at
16  2-3.)

17  Dr. Palmer's research team was rounded out by an administrative aid, a lab
18  technician, and a lab supervisor. All of them are now defendants in this lawsuit. (*See*
19  *generally* 1st Am. Compl.) The administrative aid, Dawn Jones Pfaff, was an SIBCR
20  employee assigned to the team. (*Id.* ¶ 4.) She was supervised by both Dr. Palmer and
21  Ms. Mansfield. (*Id.* ¶¶ 4, 10.) The lab technician, Jessica Reichow, was a UW employee
22  assigned to work with Dr. Palmer. (*Id.* ¶ 6.) The lab supervisor, Barbara Brooks Worrell,

has a PhD and was Ms. Mansfield's supervisor with respect to lab work. (*Id.* ¶ 7.) Ms. Brooks Worrell had design and implementation authority over Dr. Palmer's team in connection with research studies funded by grants from the National Institutes of Health. (*Id.*) Together, these five worked at the VA to research and treat diabetes patients. (*See id.* ¶ 10.)

Over time, certain relationships within the team soured. In particular, and most relevant to this lawsuit, Ms. Mansfield and Ms. Pfaff grew to dislike one another. It is unclear to the court exactly what sparked this mutual dislike, but it is evident that with time it became rather pronounced. To begin, Ms. Mansfield took exception to a number of Ms. Pfaff's clinical practices. (*Id.* ¶ 12.) For example, Ms. Mansfield alleges that Ms. Pfaff publicized patients' private medical histories (*id.* ¶¶ 12B-C), prepared doses of prescription medicine without a health care license (*id.* ¶ 12E), and scheduled a child for an appointment at an adults-only clinic (*id.* ¶ 12I). Ms. Mansfield makes similar allegations against other members of the team, and alleges that she publicized those allegations at various times. (*Id.* ¶ 12.)

However, the dispute between Ms. Mansfield and Ms. Pfaff clearly took on a personal dimension as well. (*See id.* ¶¶ 13-22.) Ms. Mansfield alleges that Ms. Pfaff physically attacked Ms. Mansfield in 2011, repeatedly slamming her head into her desk then fleeing down a stairwell "as a good Samaritan tried to stop her for questioning." (*Id.* ¶ 19.) She further alleges that Ms. Pfaff attempted to cover up this attack by orchestrating an effort by the Palmer research team to "furnish coordinated round-table testimony." (*Id.*) She alleges that this testimony not only attempted to absolve Ms. Pfaff

of any blame for the attack, but also tried to portray Ms. Mansfield as mentally unstable, an illegal drug distributor, and a violent threat. (*Id.*) The VA police officer who investigated the incident concluded that Ms. Mansfield falsified her injury report and that the alleged attack never happened. (*Id.* ¶ 20.)

As a result of these incidents, Ms. Mansfield lost her job. VA officials concluded that Ms. Mansfield could not be trusted with access to a federal facility in light of her falsified injury report. (*Id.* ¶ 20.) This conclusion, in turn, caused UW to terminate Ms. Mansfield's employment. (*Id.*) A UW employee named Mara Fletcher reviewed Ms. Mansfield's file, including her reports of abuses by the Palmer research team, and "executed UW's authorization" to terminate her UW employment. (*Id.* ¶ 8, 21.) Ms. Fletcher is now a defendant in this lawsuit as well. (*Id.* ¶ 8.)

Several years later, the dispute migrated from the halls of the VA office to the court system. In 2013, Ms. Mansfield filed a complaint in King County Superior Court. Her original complaint alleged only a single cause of action for wrongful interference with contract against Ms. Pfaff. However, she amended her original complaint in state court, adding the rest of the Palmer research team as defendants as well as UW, SIBCR,[1] and Ms. Fletcher. (*See generally* 1st Am. Compl.) In addition, she alleged new causes of action for negligent infliction of emotional distress, negligent supervision and retention, civil conspiracy, and First Amendment violations under 28 U.S.C. § 1983. (1st Am. Compl. ¶¶ 27-37.)

---

[1] SIBCR has subsequently been dismissed from this action. (*See* Dkt. # 11.)

ORDER- 4

The United States was soon substituted as a defendant in the case. The United States substituted itself as sole party defendant in place of Ms. Pfaff, Ms. Reichow, and Ms. Brooks Worrell. (Not. of Substitution (Dkt. ## 3, 13).) The United States certified that these defendants were acting within the scope of their federal employment when the alleged torts occurred and that accordingly they were entitled to a limited form of immunity under the Westfall Act, 28 U.S.C. § 2679(d)(2). (Pfaff/Reichow Certification (Dkt. # 1-3); Brooks Worrell Certification (Dkt. # 13).)

This summary judgment motion followed the United States' substitution. In effect, the motion challenges the substitution by asserting that Ms. Pfaff, Ms. Reichow, and Ms. Brooks Worrell were acting outside the scope of their employment when the alleged torts occurred. (*See* Mot.) Ms. Mansfield argues that she is entitled to summary judgment on several factual issues related to the substitution and to Westfall Act immunity. (*Id.*)

### III. ANALYSIS

**A. Governing Law Under the Westfall Act**

The Westfall Act creates a species of tort immunity for federal employees acting within the scope of their federal office or employment. *See, e.g.*, *Osborne v. Haley*, 549 U.S. 225, 245-47 (2007). The immunity takes effect through the substitution of the United States as the named defendant in a pending tort action against a federal employee. *See id.* Under the Westfall Act, an action against a federal employee must be deemed an action against the United States if the federal employee was acting "within the scope of his office or employment" at the time of the alleged conduct. *See* 28 U.S.C.

§ 2679(d)(1). When the Act applies, the Attorney General can certify that the defendant-employee was acting in the scope of his or her employment, at which time the United States is substituted as the sole defendant in the case:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

*Id.*; *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1150-51 (9th Cir. 2003) (citing 28 U.S.C. § 2679(d)(1)). As noted above, this substitution happened here. (Pfaff/Reichow Certification; Brooks Worrell Certification.)

Ms. Mansfield is now challenging the government's certification, as she has a right to do. *See Pauly*, 348 F.3d at 1150-51. Upon a challenge, Ms. Mansfield has the burden of proving that the conduct underlying the tort claim occurred outside the scope of Defendants' employment. *See id.* Following a challenge, state law governs the scope-of-employment inquiry under the Westfall Act. *Id.* at 1151 (citing *McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001)). "Under Washington law, an employee acts within the scope of his employment, even if his acts are contrary to instructions or constitute intentional torts, when he is 'engaged in the performance of the duties required of him by his contract of employment' or when 'he [is] engaged at the time in the furtherance of the employer's interest.'" *Id.* (citing *Dickinson v. Edwards*, 716 P.2d 814, 819 (Wash. 1986)).

ORDER- 6

From a procedural standpoint, this case is governed by the Supreme Court's decision in *Osborne*, 549 U.S. 225. In *Osborne*, the Supreme Court addressed what a district court should do in the atypical situation where the government certifies that the alleged tortious acts were within the scope of employment by simply denying that the acts ever occurred. *See id.* at 246-47. In a more typical case, the alleged tort might be, for example, an automobile accident. *See id.* at 251 n.15. In an automobile accident case, the government can ordinarily make a scope of employment determination without accepting or denying the critical allegations in the complaint—for example, that the employee acted negligently. *See id.* This case, like *Osborne*, presents a different set of facts. Here, the government denies the allegations in the complaint—specifically, the allegation that Ms. Pfaff attacked Ms. Mansfield and that she and other defendants lied about it. (*See* Mot. to Dismiss at 9-11.) Moreover, the government's certification is premised on this denial. (*See id.*) This is the precise situation addressed in *Osborne*. *See* 549 U.S. at 245-47. Accordingly, the procedure outlined in *Osborne* is the correct procedure here as well.

Put simply, the *Osborne* procedure requires the court to resolve material factual disputes as necessary to determine Westfall Act immunity. *Id.* at 248-252. Under *Osborne*, the court is required to resolve facts necessary to determining whether the substitution was proper. *Id.* Here, that means the court must make a factual determination about whether Defendants' conduct was within the scope of their respective employment. As the court in *Osborne* pointed out, this determination must be

made even if the factual dispute in question "goes to the heart of the merits," and even if finding certain facts might jeopardize an eventual jury trial. *Id.* at 251-53.

On this motion, the court must view factual disputes through the familiar lens of summary judgment. Because Ms. Mansfield brought her challenge to the United States' certification and substitution in the form of a summary judgment motion, the ordinary summary judgment standard applies to it. (*See* Mot.)

**B.     Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

> [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

ORDER- 8

The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50.

The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658.

**C.     Ms. Mansfield's Collateral Estoppel Arguments**

The centerpiece of Ms. Mansfield's motion is her assertion that collateral estoppel resolves several of the material factual disputes in this case. (*See* Mot. at 7-10, 16-19.) Ms. Mansfield argues that the key issues in this case—namely, whether Ms. Pfaff assaulted Ms. Mansfield and whether Ms. Pfaff and other defendants lied to cover it up—were already decided in a prior administrative proceeding. (*See id.*) She argues that the collateral estoppel doctrine bars relitigation of these issues now because the issues were already decided once before. (*Id.*) As such, she asks the court to find that these facts are undisputed and apply the law to them to reach various legal conclusions—for example, that Defendants' conduct was outside the scope of their employment and that Ms. Mansfield is entitled to judgment as a matter of law on her tort claims. (*Id.*)

In response, Defendants argue that collateral estoppel does not apply. (*See* USA Resp. (Dkt. # 26) at 9-12; University Resp. (Dkt. # 29) at 10-14.) They assert that none of the defendants named in this action were parties to the prior action and that the

ORDER- 9

previous tribunal did not decide the factual issues that Ms. Mansfield claims it did. (*See id.*) As such, Defendants argue that collateral estoppel does not apply and therefore Ms. Mansfield's motion for summary judgment should be denied in its entirety. (*See id.*) For the reasons stated below, the court agrees with Defendants.

**D.     Collateral Estoppel Generally**

The doctrine of collateral estoppel prevents parties from litigating the same issues twice. *In re Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012). If the same parties have litigated the same factual issue before in a prior proceeding, they may be "collaterally estopped" from litigating the issue again in a subsequent proceeding. *See id.* If a party is collaterally estopped from relitigating an issue, that factual issue is considered decided for purposes of the subsequent proceeding. *See id.* The purpose of the doctrine is to encourage respect for judicial determinations, to ensure finality, to conserve judicial resources and prevent multiplicity of actions, and to ease inconveniences and burdens on litigants. *See, e.g.*, *State Farm Mut. Auto Ins. Co. v. Avery*, 57 P.3d 300, 303-04 (Wash. Ct. App. 2002); *State v. Vasquez*, 34 P.3d 1255, 1258 (Wash. Ct. App. 2001). When a federal court sits in diversity, it looks to the applicable state law of collateral estoppel. *Nw. Acceptance Corp. v. Lynwood Equip., Inc.*, 841 F.2d 918, 926 (9th Cir. 1988) (applying Washington law of collateral estoppel).

Under Washington law, collateral estoppel applies only if the party to be estopped has had a full and fair opportunity to litigate the issue. *Avery*, 57 P.3d at 303-04. Washington courts apply a four part test to make this determination. *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 961 (Wash. 2004). The party seeking to

apply the doctrine must demonstrate that (1) the identical issue was decided in a prior adjudication, (2) the prior adjudication resulted in a final judgment on the merits, (3) collateral estoppel is asserted against the same party or a party in privity with the same party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice. *Id.* The party asserting collateral estoppel has the burden of showing that it applies. *Avery*, 57 P.3d at 303-04. In general, collateral estoppel will not bar relitigation of issues that were tangential or inconsequential in the prior action. *Barr v. Day*, 854 P.2d 642, 648 (Wash. Ct. App. 1993). Additionally, "[a] court will not apply collateral estoppel if, because of ambiguity or indefiniteness, it is unclear whether the issue was previously determined." *Estate of Sly v. Linville*, 878 P.2d 1241, 1243 (Wash. Ct. App. 1994) (citing *Henderson v. Bardahl Int'l Corp.*, 431 P.2d 961, 967 (Wash. 1967)).

### E.     Collateral Estoppel Does Not Apply Here

Ms. Mansfield has not met her burden of demonstrating the four prerequisites for collateral estoppel. *See Avery*, 57 P.3d at 303-04. She has not shown that identical issues were decided in the previous action, nor has she shown that the same parties were involved or that injustice would not result. *See Christensen*, 96 P.3d at 961. In essence, she has not demonstrated that the Defendants in this case have had a full and fair opportunity to litigate the issues she claims should now be subject to a relitigation bar. As such, collateral estoppel does not apply. *See Avery*, 57 P.3d at 303-04.

The previous action took place in front of Washington's Board of Industrial Insurance Appeals ("BIAA"). After her alleged injury, Ms. Mansfield filed a claim for workers compensation benefits with the Department of Labor and Industries ("L&I").

1  (BIAA Decision and Order (Dkt. # 20-2) at 1-2.) L&I denied Ms. Mansfield's claim,

2  finding that there was insufficient proof that she had been injured. (*Id.*) Ms. Mansfield

3  appealed her denial but L&I affirmed, so she appealed again—this time to the BIAA.

4  (*Id.*) The BIAA heard testimony related to the matter on three separate days in the

5  summer of 2013. (*Id.*) Ms. Mansfield and Ms. Pfaff both testified, as did several other

6  witnesses, none of whom are named defendants in this case. (*Id.*) On October 23, 2013,

7  the BIAA issued an order reversing L&I's denial of benefits. (*See id.* at 16.) The

8  BIAA—specifically, Industrial Appeals Judge Mychal Schwartz—found that "Ms.

9  Mansfield sustained an injury in the course of employment on March 9, 2011, when she

10  was assaulted while at work . . . ." (*Id.* at 15.) Ms. Mansfield argues that this decision

11  has preclusive effect on the case at hand and that the court should accordingly treat it as

12  undisputed fact that (1) Ms. Pfaff assaulted her; and (2) Ms. Pfaff and other defendants

13  lied to cover it up. (*See* Mot. at 7-10, 16-19.)

14        Ms. Mansfield is correct, in general, that decisions of administrative tribunals can

15  have preclusive effect in subsequent litigation if certain requirements are met. *See, e.g.*,

16  *Christensen*, 96 P.3d at 961. Courts must evaluate, for example, whether the agency

17  acted within its competence, the differences between procedures in the administrative

18  proceeding and the court procedures, and public policy considerations. *Id.* However, in

19  this case these additional requirements do not even come into play because Ms. Pfaff has

20  not made a basic showing that the elements of collateral estoppel are fulfilled with

21  respect to the BIAA decision.

22

To begin, the issues in the two cases are not identical. For there to be identity of issues, it must be "clear the same issues were litigated in the prior action." *Mead v. Park Place Props.*, 681 P.2d 256 (Wash. Ct. App. 2001). If there is any uncertainty about identity of issues, collateral estoppel is not appropriate. *Id.* As a corollary, when an issue is not reached in prior litigation, that issue cannot have collateral estoppel effect in subsequent litigation. *Id.*

Here, Ms. Mansfield seeks to have the court apply collateral estoppel to issues that the BIAA simply did not reach in the previous matter. She wishes to apply collateral estoppel to find that Ms. Pfaff assaulted her, but the BIAA was careful not to decide that issue. (BIAA Decision and Order at 14-15.) The BIAA simply found that "Ms. Mansfield sustained an injury . . . when she was assaulted at her desk . . . ." (*Id.* at 15 (Finding of Fact 2).) In fact, the BIAA pointed out in a footnote that "[n]otwithstanding the efforts of counsel to put Ms. Jones-Pfaff on trial for the assault, the question is not who committed the assault, but rather, whether an assault occurred at all." (*Id.* at 15 n.13.) Thus, the BIAA expressly declined to make the very finding that Ms. Mansfield would now have the court give preclusive effect. (*See id.*) Ms. Mansfield also wishes to apply collateral estoppel to find that Defendants lied to cover up Ms. Pfaff's assault. (Mot. at 7-10, 16-19.) But the BIAA did not decide this issue either. The BIAA instead concluded that there was a "possibility" that Defendants were "circling the wagons to protect themselves and the study against a thorn in their collective side." (BIAA Decision and Order at 15.) A finding that a state of affairs is "possible" is not tantamount to a finding that it occurred, and the court "will not apply collateral estoppel if, because

of ambiguity or indefiniteness, it is unclear whether the issue was previously determined." *Estate of Sly*, 878 P.2d at 1243. Ms. Mansfield simply has not demonstrated, as she must, that the issues in this case are the same as in the BIAA appeal. *See Christensen*, 96 P.3d at 961.

Further, the parties are different. In general, collateral estoppel can apply only to parties to the original litigation and parties in privity with such parties. *See, e.g.*, *Christensen*, 96 P.3d at 961. "Privity" describes a "mutual or successive relationship to the same right or property." *World Wide Video of Wash., Inc. v. City of Spokane*, 103 P.3d 1265, 1274 (Wash. Ct. App. 2005). "Its binding effect flows from the fact that the successor who acquires an interest in the right is affected by the adjudication in the hands of the former owner." *Id.*

This action and the BIAA action do not have identical parties. In the BIAA action, the parties were (1) Ms. Mansfield, and (2) L&I. None of the defendants in this action were parties in the BIAA action, nor have any of them succeeded to L&I's interest in its dispute against Ms. Mansfield. And although Ms. Mansfield argues that Ms. Pfaff can be treated as a party in the BIAA action because she testified as a witness in that action (*see* Mot. at 19 (citing *Hackler v. Hackler*, 683 P.2d 241, 243 (Wash. Ct. App. 1984))), the same argument cannot be made for the other defendants in this action. Moreover, even Ms. Pfaff is not presently a party to this action (*see* Dkt.), the United States having been substituted for her (*see* Pfaff/Reichow Not. of Substitution), and there is no question that the United States was not a party to the BIAA action (*see generally* BIAA Decision and Order; USA Resp. Ex. A ("I don't think the United States is a party

to this in any manner.")). Accordingly, Ms. Mansfield has not met her burden of demonstrating that there is an identity of parties of the kind required to support collateral estoppel. *See Christensen*, 96 P.3d at 961.

Last, it would work an injustice to apply the collateral estoppel doctrine. This is primarily true for the reasons already discussed above. In determining whether it would be unjust to apply collateral estoppel, courts generally focus on whether the affected parties have already had a full and fair opportunity to litigate their claim in a neutral forum. *Nielson By and Through Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 956 P.2d 312, 317 (Wash. 1998). Here, as discussed above, they have not. Because Defendants were not parties to the previous litigation and because different issues were being decided, Defendants have had no opportunity to litigate their claims—i.e., present a defense and call witnesses to dispute Ms. Mansfield's version of events. Their rights were not at stake in the BIAA proceeding, they did not appear in the BIAA proceeding, and it would be unfair to give the BIAA proceeding preclusive effect against them.

For the reasons described above, the doctrine of collateral estoppel does not apply here.

**F.     The Remainder of Ms. Mansfield's Motion is Denied**

The remainder of Ms. Mansfield's requests for summary judgment relief are founded on her assertion that the collateral estoppel doctrine creates a set of undisputed facts that permits various conclusions of law. Because the court has concluded that collateral estoppel does not apply, Ms. Mansfield's arguments fail and summary judgment is not appropriate. In any event, Defendants vigorously dispute all of the facts

1  Ms. Mansfield would have the court treat as undisputed.  As such, it cannot be said that

2  there is no genuine dispute of material fact here.  *See Galen*, 477 F.3d at 658.

### IV. CONCLUSION

For the foregoing reasons, Ms. Mansfield's motion for partial summary judgment (Dkt. # 20) is DENIED.

Dated this 27th day of August, 2014.

>  *[signature]*

JAMES L. ROBART
United States District Judge