1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                    AT SEATTLE

9

10   PAMELA MANSFIELD,                              CASE NO. C14-0948JLR

11                     Plaintiff,                   ORDER

12             v.

13   DAWN JONES-PFAFF, et al.,

14                     Defendants.

15        Before the court are five motions from the parties:  (1) Defendant Barbara Brooks-

16   Worrell's motion to strike claims pursuant to Washington's anti-SLAPP statute[1] and the

17   University Defendants'[2] motion for partial summary judgment (Mot. (Dkt. # 40)); (2)

18   Defendants Jessica Reichow and Dawn Jones-Pfaff's joinder in the anti-SLAPP motion

19   _____

20        [1] Washington Act Limiting Strategic Lawsuits Against Public Participation.  RCW ch.
     4.24; *see Davis v. Cox*, 325 P.3d 255, 261 n.1 (Wash. Ct. App. 2014).

21        [2] "The University Defendants" include Ms. Brooks-Worrell, Defendant Dr. Jerry Palmer,
     Defendant Mara Fletcher, and Defendant University of Washington.  (*See* Ans. to First Am.
22   Compl. (Dkt. # 16) at 1.)

1  and Ms. Reichow's joinder in the motion for partial summary judgment (Joinder (Dkt.

2  # 43); (3) Plaintiff Pamela Mansfield's motion to dismiss Ms. Brooks-Worrell and certain

3  claims against Defendant Dr. Jerry Palmer (Not. of Dis. (Dkt. # 46)); (4) Ms. Mansfield's

4  motion for leave to file a third amended complaint (Mot. to Am. (Dkt. # 48)); and (5) Ms.

5  Mansfield's motion for a continuance under Federal Rule of Civil Procedure 56(d) (Mot.

6  to Cont. (Dkt. # 49)).[3]

7        The principle issues about which the parties argue in these motions are whether

8  Washington's anti-SLAPP statute bars some of Ms. Mansfield's claims, and whether she

---

[3] Portions of the motion for a continuance are improper.  Ms. Mansfield filed this motion in addition to her response brief, and labeled the motion as a "Motion for Order (i)denying or continuing defendants' premature Anti-SLAPP Motions."  (Mot. to Cont. at 1.)  To the extent the motion requests a Rule 56(d) continuance, it is appropriate.  *See, e.g.*, *Kocsis v. Delta Air Lines, Inc.*, 963 F. Supp. 2d 1002, 1019 (D. Haw. 2013) ("Ordinarily, a Rule 56(d) request must be made in a separate motion or formal request.").  However, Ms. Mansfield also uses this motion to urge the denial or postponement of Defendants' motions on grounds other than Rule 56(d).  For example, Ms. Mansfield's motion argues that Defendants' anti-SLAPP motion conflicts with multiple Federal Rules of Civil Procedure, including Rule 11, Rule 15, and Rule 41.  (*See* Mot. to Cont. at 6-9.)  No authority of which the court is aware authorizes the filing of supplemental motions on those subjects, and Ms. Mansfield has not cited any.  (*See generally* Mot. to Cont.)  As such, those additional arguments are appropriate only in a response brief.  *See* Local Rules W.D. Wash. LCR 7(b)(2).  Yet Ms. Mansfield has also filed a response brief (Dkt. # 50), and this District's Local Rules allow her only one response brief, *see* Local Rules W.D. Wash. LCR 7(b)(2).

      Consequently, Defendants request that the court strike Ms. Mansfield's motion.  (Opp. to Mot. to Cont. (Dkt. # 51) at 1-3.)  The court declines to do so, because it finds that Defendants have not suffered prejudice from Ms. Mansfield's improper filing.  As an initial matter, most of the arguments raised in this motion are simply duplicates of arguments in Ms. Mansfield's response brief.  (*Compare* Mot. to Cont. *with* Resp.)  Moreover, although Ms. Mansfield has in effect filed two response briefs, she has not exceeded the page limit of 24 pages for a response brief, Local Rules W.D. Wash. LCR 7(e)(3)—her response brief is 18 pages long (*see* Resp.), and the improper portions of her motion to continue add up to fewer than 6 additional pages (*see* Mot. to Cont. at 4, 6-9).  Finally, in reaching its decision the court has not relied on the arguments Ms. Mansfield makes in the improper portions of her motion to continue.  The court cautions Ms. Mansfield, however, that further failure to abide by the Local or Federal Rules may result in sanctions.  *See* Local Rules W.D. Wash. LCR 11(c).

1    should be allowed to dismiss some of her claims and amend others in order to avoid the

2    impact of the anti-SLAPP statute.  As relevant here, Washington's anti-SLAPP statute

3    affords a person who communicates with a government agency on a matter reasonably of

4    concern to that agency absolute immunity against claims based on such communications.

5    RCW 4.24.510.  Defendants assert that Ms. Mansfield's state law claims come under this

6    statute because those claims are based on Defendants' communications to law

7    enforcement for the United States Department of Veterans' Affairs ("VA").  (*See*

8    *generally* Mot.; Joinder.)  Rather than oppose this argument on its merits, Ms. Mansfield

9    attempts to dismiss some of her claims and amend others to remove all reference to

10   Defendants' communications to the VA police.  (*See generally* Not. of Dis.; Mot. to Am.)

11   Ms. Mansfield contends that Defendants' arguments are moot in light of her motions to

12   dismiss and amend.  (*See generally* Resp.)  Alternatively, she urges the court to postpone

13   ruling on Defendants' motion until she has a chance to conduct further discovery.  (*Id.*)

14   The University Defendants, joined by Ms. Reichow, also seek partial summary judgment

15   on the ground that some of Ms. Mansfield's claims are barred by the statute of

16   limitations.  (*See* Mot. at 13-18; Joinder at 3.)

17          The parties' arguments on the anti-SLAPP issues are irrelevant, however, due to

18   an issue that no party addresses in the briefing—the effect of the United States'

19   substitution under the Westfall Act on the court's ability to adjudicate the anti-SLAPP

20   motion.  Only Ms. Brooks-Worrell, Ms. Jones-Pfaff, and Ms. Reichow seek anti-SLAPP

21   relief (*see* Mot.; Joinder), yet substitution has displaced them as defendants in this suit

22   and replaced them with the United States (*see* Not. of Sub. & Cert. 1 (Dkt. # 3); Not. of

ORDER- 3

1  Sub. & Cert. 2 (Dkt. # 13)).  As a result, no current party moves for anti-SLAPP relief,

2  and the court must deny the joint anti-SLAPP motion without reaching its merits.

3      Having considered the submissions of the parties, the balance of the record, and

4  the governing law, and being fully advised, the court DENIES the joint anti-SLAPP

5  motion; GRANTS Ms. Mansfield's motion to dismiss; GRANTS Ms. Mansfield's motion

6  for leave to file a third amended complaint; GRANTS in part and DENIES in part the

7  motion for partial summary judgment; and DENIES as moot Ms. Mansfield's motion for

8  a continuance.

9                    **I.      BACKGROUND**

10  **A.      Factual Background**

11      This case began as a dispute between co-workers but has now blossomed into a

12  federal court lawsuit.  Plaintiff Ms. Mansfield is a nurse who was employed by the

13  University of Washington ("UW").  (2d Am. Compl. (Dkt. # 44) ¶¶ 1, 10.)  She began

14  working for UW in 1994 and eventually advanced to the position of Research-Nurse-2.

15  (*Id.* ¶ 10.)  In 2007, she was appointed to a lead position assisting Dr. Jerry Palmer with

16  several grant-funded diabetes prevention and treatment studies.  (*Id.*)  Dr. Palmer and his

17  research team conducted those studies at the Seattle office of the VA.  (*Id.*)  As such, Ms.

18  Mansfield was required to hold an uncompensated VA appointment.  (Mot. at 3.)

19      In addition to Ms. Mansfield, Dr. Palmer's research team included an

20  administrative aid, a lab technician, and a lab supervisor.  All of them are now defendants

21  in this lawsuit.  (*See generally* 2d Am. Compl.)  The administrative aid, Dawn Jones-

22  Pfaff, was an employee of the Seattle Institute for Biomedical and Clinical Research

ORDER- 4

("SIBCR") who was assigned to the team.  (*Id.* ¶ 4.)  She was supervised by both Dr. Palmer and Ms. Mansfield.  (*Id.* ¶¶ 4, 10.)  The lab technician, Jessica Reichow, was a UW employee assigned to work with Dr. Palmer.  (*Id.* ¶ 6.)  The lab supervisor, Barbara Brooks-Worrell, was Ms. Mansfield's supervisor with respect to lab work.  (*Id.* ¶ 7.)  Ms. Brooks-Worrell had design and implementation authority over Dr. Palmer's team in connection with research studies funded by grants from the National Institutes of Health. (*Id.*)  Together, these five team members ("the Palmer team")[4] worked at the VA to research and treat diabetes patients. (*See id.* ¶ 10.)

Over time, certain relationships within the Palmer team soured.  In particular, and most relevant to this lawsuit, Ms. Mansfield and Ms. Jones-Pfaff grew to dislike one another.  It is unclear to the court exactly what sparked this mutual dislike, but it is evident that with time it became rather pronounced.  To begin, Ms. Mansfield took exception to a number of Ms. Jones-Pfaff's clinical practices.  (*Id.* ¶ 12.)  For example, Ms. Mansfield alleges that Ms. Jones-Pfaff publicized patients' private medical histories (*id.* ¶¶ 12B-C), prepared doses of prescription medicine without a health care license (*id.* ¶ 12E), and scheduled a child for an appointment at an adults-only clinic (*id.* ¶ 12I).  Ms. Mansfield makes similar allegations against other members of the team, and claims that she publicized those allegations at various times.  (*Id.* ¶ 12.)

The dispute between Ms. Mansfield and Ms. Jones-Pfaff took on a personal dimension as well.  (*See id.* ¶¶ 15-22.)  Ms. Mansfield alleges that Ms. Jones-Pfaff

---

[4] "The Palmer team" will generally be used to refer to Dr. Palmer, Ms. Brooks-Worrell, Ms. Jones-Pfaff, and Ms. Reichow—the Defendant team members.

1  physically attacked Ms. Mansfield in 2011, repeatedly slamming her head into her desk

2  and then fleeing down a stairwell "as a good Samaritan tried to stop [Ms. Jones-Pfaff] for

3  questioning." (*Id.* ¶ 19.)  She further alleges that Ms. Jones-Pfaff attempted to cover up

4  this attack by orchestrating an effort by the Palmer team to "furnish coordinated round-

5  table testimony." (*Id.*)  She alleges that through this testimony the other Palmer team

6  members not only attempted to absolve Ms. Jones-Pfaff of any blame for the attack, but

7  also tried to portray Ms. Mansfield as mentally unstable, an illegal drug distributor, and a

8  violent threat.  (*Id.*)

9         As a result of these incidents, Ms. Mansfield lost her job.  VA officials concluded

10  that Ms. Mansfield could not be trusted with access to a federal facility in light of her

11  falsified assault report.  (*Id.* ¶ 20.)  The VA's decision to bar Ms. Mansfield from its

12  facility, in turn, caused UW to terminate Ms. Mansfield's employment.  (*Id.*)  A UW

13  employee named Mara Fletcher reviewed Ms. Mansfield's file, including her reports of

14  abuses by the Palmer research team, and "executed UW's authorization" to terminate Ms.

15  Mansfield's UW employment.  (*Id.* ¶ 8, 21.)  Ms. Fletcher is now a defendant in this

16  lawsuit as well.  (*Id.* ¶ 8.)

17  **B.     Procedural Background**

18         Several years after Ms. Mansfield's termination, the dispute migrated from the

19  halls of the VA office to the court system.  On March 10, 2013, Ms. Mansfield filed a

20  complaint in King County Superior Court.  (State Ct. Rec. (Dkt. # 2-1) at 5.)  Her original

21  complaint alleged only a single cause of action for wrongful interference with contract

22  //

against Ms. Pfaff.  (*Id.* at 5, 7.)  However, she amended her original complaint in state court, adding the rest of the Palmer team as defendants as well as SIBCR and UW.[5]  (*See generally id.* at 17-27 ("1st Am. Compl.").)  In addition, she introduced new causes of action for negligent infliction of emotional distress, negligent supervision and retention, civil conspiracy, and First Amendment violations under 42 U.S.C. § 1983.  (1st Am. Compl. ¶¶ 27-37.)

On June 27, 2014, the United States of America removed the case to federal court and substituted itself for Ms. Reichow and Ms. Jones-Pfaff pursuant to 28 U.S.C. § 2679(d)(2).  As required for removal and substitution under § 2679(d)(2), the United States certified that Ms. Reichow and Ms. Jones-Pfaff were acting within the scope of their federal employment at all times relevant to Ms. Mansfield's tort claims.  (*See* Not. of Rem. (Dkt. # 1); Not. of Sub. & Cert. 1.)  Shortly thereafter, the United States substituted itself for Ms. Brooks-Worrell, certifying that she too was acting within the scope of her federal employment at all times relevant to Ms. Mansfield's tort claims. (Not. of Sub. & Cert. 2.)

On July 17, 2014, newly-substituted Defendant the United States filed a motion to dismiss, and Ms. Mansfield moved to amend her complaint.  (*See* U.S. Mot. to Dis. (Dkt. # 14); 7/17/14 Mot. to. Am. (Dkt. # 15).)  In amending, Ms. Mansfield sought to remove her claim for negligent supervision and retention and allege that much of the conduct that forms the basis of her claims took place outside the scope of Defendants' employment

---

[5] SIBCR and UW have subsequently been dismissed from this action.  (*See* Dkt. ## 11, 56.)

ORDER- 7

1   with the VA.  (*See generally* 7/17/14 Mot. to Am.)  The latter amendment would allow

2   Ms. Mansfield to resist the United States' motion to dismiss.  (*See* Resp. to 7/17/14 Mot.

3   to Am. (Dkt. # 18) at 5.)  The court granted her leave to amend on August 1, 2014 (Order

4   (Dkt. # 22)); however, Ms. Mansfield did not file her second amended complaint until

5   September 17, 2014 (2d Am. Compl. (Dkt. # 44)).

6          On August 18, 2013, after the court granted leave to amend but before Ms.

7   Mansfield filed her second amended complaint, Ms. Brooks-Worrell notified Ms.

8   Mansfield by email of Defendants' position that several of Ms. Mansfield's claims are

9   subject to Washington's anti-SLAPP statute.  (9/11/14 Berntsen Decl. (Dkt. # 42) at 4.)

10  The email requested that Ms. Mansfield voluntarily withdraw any claims based on

11  communications by Ms. Brooks-Worrell to VA police officers.  (*Id.*)  It also warned that

12  if Ms. Mansfield did not comply, Ms. Brooks-Worrell would file a motion to strike the

13  offending claims.  (*Id.*)  Ms. Mansfield did not respond (*id.* ¶ 3), and on September 11,

14  2014, Ms. Brooks-Worrell filed her anti-SLAPP motion (*See* Mot. (Dkt. # 40)).  On the

15  same day, Ms. Reichow and Ms. Jones-Pfaff filed their joinder in Ms. Brooks-Worrell's

16  motion.  (*See* Joinder (Dkt. # 43).)[6]

17         Six days later, Ms. Mansfield sprung into action.  On September 17, 2013, she

18  filed her second amended complaint (Dkt. # 44).  Then, on September 19, 2013, she

19  moved to dismiss Ms. Brooks-Worrell and certain claims against Dr. Palmer (Dkt. # 46).

20

21  _____

       [6] In the same filing as Ms. Brooks-Worrell's anti-SLAPP motion, the University
22  Defendants moved for partial summary judgment.  (*See generally* Mot.)  Ms. Reichow joined in
    the motion for partial summary judgment.  (*See* Joinder at 2-3.)

1    She followed that on September 25, 2014, with a motion for leave to file a third amended

2    complaint (Dkt. # 48) and a motion for a continuance (Dkt. # 49).  The proposed third

3    amended complaint changes the way Ms. Mansfield recounts the events that followed the

4    alleged assault.  Whereas the second amended complaint asserts that the Palmer team

5    made statements to VA police that led to Ms. Mansfield's termination (2d Am. Compl.

6    ¶¶ 19-22, 24, 30), the proposed third amended complaint contains no reference to the VA

7    police (Mot. to Am. Ex. 1 ("Jacobson Decl.") ¶ 2, Ex. 2 ("Proposed 3d Am. Compl.")

8    ¶¶ 19-22, 24, 30).  Instead, the proposed third amended complaint asserts that the Palmer

9    team made statements to VA and UW human resources ("HR") administrators that led to

10   Ms. Mansfield's termination.  (*Id.*)  Ms. Mansfield's and Defendants' motions are now

11   before the court.

12                              **II.    DISCUSSION**

13         As stated above, the parties focus the majority of their attention on the

14   applicability of Washington's anti-SLAPP statute and the interaction between the anti-

15   SLAPP motion and Ms. Mansfield's motions to dismiss certain claims and amend her

16   complaint.  For the reasons discussed below, the court concludes that substitution of the

17   United States precludes consideration of the anti-SLAPP motion, and the court therefore

18   denies that motion.  Proceeding to the remaining motions, the court grants Ms.

19   Mansfield's motion to dismiss Ms. Brooks-Worrell and any common law claims against

20   Dr. Palmer; grants Ms. Mansfield's motion for leave to amend her complaint; grants in

21   part and denies in part the motion for partial summary judgment; and denies as moot Ms.

22   Mansfield's motion for a continuance.

**A.      The United States' Substitution under the Westfall Act and the Anti-SLAPP Motion**

Ms. Brooks-Worrell, Ms. Jones-Pfaff, and Ms. Reichow ("the anti-SLAPP Defendants") bring a joint motion under Washington's anti-SLAPP statute.  (*See* Mot.; Joinder.)  Before they filed their motion, however, the United States substituted itself for all three anti-SLAPP Defendants pursuant to 28 U.S.C. § 2679(d)(2), commonly known as the Westfall Act.  (*See* Not. of Sub. & Cert. 1; Not. of Sub. & Cert. 2.)  Consequently, the court must decide whether parties for whom the United States has substituted ("displaced defendants") may bring motions attacking a plaintiff's claims.  The court concludes that the Westfall Act does not permit motions by displaced defendants and therefore denies the joint anti-SLAPP motion.  Further, the court orders that if Ms. Mansfield wishes to challenge the United States' substitution, she must do so in a motion filed no later than three months from the date of this order.

1.   The Westfall Act generally

The Westfall Act provides immunity against common law torts to federal employees acting within the scope of their employment.  *See Osborn v. Haley*, 549 U.S. 225, 245-47 (2007).  This immunity functions through substitution of the United States as defendant in place of the employee.  *See id.*  Substitution can occur in several ways.  An employee may move for substitution, or, as occurred here, the United States may substitute itself by certifying that the defendant-employee acted within the scope of his or her employment at the time of the incident out of which the claim arose.  *See* 28 U.S.C.
//

1  §§ 2679(d)(1)-(3).  Following certification and substitution, the action is deemed to be an

2  action against the United States.  28 U.S.C. § 2679(d)(2).

3      If the plaintiff opposes substitution, he or she may challenge the scope-of-

4  employment certification.  *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37

5  (1995).  The United States' certification, however, is "prima facie evidence that a federal

6  employee was acting within the scope of her employment at the time of the incident,"

7  *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995), and the plaintiff bears the

8  burden of disproving the certification by a preponderance of the evidence, *Pauly v. U.S.*

9  *Dep't of Agri.*, 348 F.3d 1143, 1151 (9th Cir. 2003).  If the plaintiff carries that burden,

10  the court re-substitutes the displaced defendants, and the action proceeds against the

11  formerly displaced defendants as individuals.  *See Osborn*, 549 U.S. at 242.

12      2.  The Westfall Act and the anti-SLAPP motion

13      Here, the key question is whether displaced defendants can file motions attacking

14  the plaintiff's claims.  The Westfall Act does not specifically address that issue, nor does

15  any case of which the court is aware.  Nevertheless, the language of the Westfall Act and

16  the Supreme Court opinions interpreting it lead the court to conclude that upon

17  certification and substitution displaced defendants are not parties to the action and thus

18  cannot file motions attacking the plaintiff's claims.

19      The language of the Westfall Act regarding the effect of certification is mandatory

20  and unconditional.  Section 2679(d)(2) provides that upon certification by the United

21  States the action or proceeding  "shall be deemed to be an action or proceeding brought

22  against the United States . . . and the United States shall be substituted as the party

1    defendant." 28 U.S.C. § 2679(d)(2). This language suggests that displaced defendants

2    are not parties who may file motions. Following certification, the action is no longer

3    against the displaced defendants and they are no longer party defendants. Rather the

4    action is now "an action . . . against the United States," and the United States has been

5    "substituted as the party defendant." *Id.*

6          The Supreme Court's descriptions of the Westfall Act support this interpretation.

7    In particular, the Supreme Court has stated that "[u]pon certification, the employee is

8    dismissed from the action and the United States is substituted as defendant." *Lamagno*,

9    515 U.S. at 420; *see also Kashin v. Kent*, 457 F.3d 1033, 1036-37 (9th Cir. 2006) ("Upon

10   certification, the government employee is dismissed from the suit . . . ."); *Davric Marine*

11   *Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 65 (1st Cir. 2001) ("Once such a certification is

12   made, the court dismisses the federal employee from the case . . . ."). Thus, because a

13   displaced defendant has been dismissed upon certification, he or she cannot file motions

14   attacking the plaintiff's claims against the remaining defendants.

15         Of course, certification by the United States is not conclusive insofar as the

16   plaintiff can challenge it. *See Lamango*, 515 U.S. at 436-37. One might contend,

17   therefore, that if the plaintiff challenges certification, displaced defendants remain parties

18   who can file motions until the court resolves the scope-of-employment issue. Yet that

19   position breaks down in light of the Supreme Court's holding that substitution is effective

20   "unless *and until* the district court determines that the federal officer originally named as

21   defendant was acting outside the scope of his employment." *Osborn*, 549 U.S. at 252

22   (emphasis added). Furthermore, on the basis of that holding the *Osborn* Court concluded

1    that "at the time the district court reviews the Attorney General's certification," the suit is

2    against the sovereign and therefore the Seventh Amendment right to a jury trial is

3    inapplicable.  *See id.*  It would be incongruous to subject the plaintiff to motions from

4    displaced defendants at a time when the plaintiff has lost the right to a jury due to the

5    United States' substitution for the displaced defendants.[7]

6         The anti-SLAPP Defendants attack Ms. Mansfield's common law claims in a joint

7    anti-SLAPP motion (*see* Mot.; Joinder); however, United States has substituted for each

8    of those defendants (*see* Not. of Sub. & Cert. 1; Not. of Sub. & Cert. 2).  As such, they

9    are not currently party defendants, and they cannot bring motions attacking Ms.

10   Mansfield's claims.  *See* 28 U.S.C. § 2679(d)(2);  *see also Lamagno*, 515 U.S. at 420;

11   *Kashin*, 457 F.3d at 1036-37.  This conclusion stands despite the possibility that Ms.

12   Mansfield will challenge certification in the future.  Substitution is effective "unless and

13   until" the court determines that the United States' certification was unwarranted.  *Osborn*,

14   549 U.S. at 252.

15        At oral argument, counsel for Ms. Brooks-Worrell urged the court to decide the

16   anti-SLAPP motion notwithstanding the United States' substitution.  According to

17   _____

18        [7] Additional support for this interpretation can be found in the Supreme Court's
     characterization of a district court's role in hearing certification challenges as "judicial review."
19   *See generally Lamango*, 515 U.S. 417.  That language suggests that substitution is complete
     upon certification but may be reversed at some later point.  *See also Nasuti v. Scannell*, 906 F.2d
20   802, 810 (1st Cir. 1990) ("Absent, however, a contrary federal judicial determination of the
     scope question, the Attorney General's certification is binding on all, including the court itself."),
21   *rev'd on other grounds by Osborn*, 549 U.S. 225.  Moreover, the Supreme Court has instructed
     district courts to resolve issues related to immunity, including Westfall Act immunity, as early as
22   possible.  *See Osborn*, 549 U.S. at 252-53.  That admonition further militates against entertaining
     motions by displaced defendants before deciding the scope-of-employment issue.

1   counsel, that course of action would be both more efficient and fairer to the anti-SLAPP

2   Defendants because it would dispose of defective claims quickly and without forcing the

3   anti-SLAPP Defendants to await the outcome of the scope-of-employment dispute.

4   Although the court is not unsympathetic to counsel's arguments,[8] they cannot overcome

5   the clear import of the Westfall Act and the Supreme Court opinions interpreting it.

6   Accordingly, the court denies the joint anti-SLAPP motion without prejudice.

7       3.  The Westfall Act issues going forward

8           Having declined to address the merits of the anti-SLAPP motion, the court is

9   mindful of the need to move forward on the issue of Westfall Act immunity. *See Osborn*,

10  549 U.S. at 252-53 ("Immunity-related issues . . . should be decided at the earliest

11  opportunity."). As previously noted (*see* 8/27/14 Ord. (Dkt. # 38)), this case presents that

12  issue in a somewhat unique posture: The United States premises its scope-of-

13  employment certification on a denial that tortious conduct ever took place. (*See* Mot. to

14  Dismiss (Dkt. # 14) at 9-11.) Thus, to determine whether substitution was proper and

15  Westfall Act immunity applies, the court must decide the key factual issues of Ms.

16  Mansfield's common law claims—that is, whether Ms. Jones-Pfaff assaulted Ms.

17  _____

18      [8] Furthermore, the court suspects that the anti-SLAPP issues are not as clear as the anti-
    SLAPP Defendants have portrayed them in their filings and at oral argument. For example, the

19  anti-SLAPP Defendants invoke the provisions of RCW 4.24.525 but explain their conduct only
    in terms of RCW 4.24.510. It is not clear that any provisions of RCW 4.24.525 apply absent an
    explicit demonstration that the underlying conduct is an act of "public participation or petition"

20  as defined in RCW 4.24.525(2). *See* RCW 4.24.525(4)(a), (b). In addition, the status of agency
    employees under RCW 4.24.510 is unclear in light of *Segaline v. Department of Labor and*

21  *Industries*, 238 P.3d 1107 (Wash. 2010), *Eklund v. Seattle Municipal Court*, 410 Fed. App'x 14
    (9th Cir. 2010), and *Tracy v. State*, 2010 WL 5395029, No. 09-5588RJB (W.D. Wash. Dec. 27,

22  2010). Although the court does not decide those issues here, the court cautions the parties that
    any future anti-SLAPP motion should address those issues.

ORDER- 14

1    Mansfield, and whether the Palmer team later lied about the assault and Ms. Mansfield's

2    conduct in an attempt to get her fired.  (*See* 8/27/14 Ord. at 7-8); *Osborn* 549 U.S. at 248-

3    53.  Ms. Mansfield bears the burden of proving by a preponderance of the evidence that

4    the displaced defendants engaged in such conduct.  *See Pauly*, 348 F.3d at 1151.

5         However, the court need not consider the propriety of substitution unless Ms.

6    Mansfield challenges the United States' scope-of-employment certification.  If Ms.

7    Mansfield wishes to make such a challenge, she must do so in a motion filed no later than

8    three months from the date of this order and noted as a fourth-Friday motion.  *See* Local

9    Rules W.D. Wash. LCR 7(d)(3).  In the meantime, Ms. Mansfield and the United States

10   may conduct relevant discovery.  The court will determine whether a hearing is necessary

11   after it reviews Ms. Mansfield's motion, if any.

12   **B.    Ms. Mansfield's Motion to Dismiss**

13        After the anti-SLAPP Defendants filed their joint motion, Ms. Mansfield entered

14   on the docket a "notice of dismissal."  (*See* Not. of Dis. (Dkt. # 46).)  With this

15   document, she seeks to dismiss her state common law claims against Dr. Palmer[9] and all

16   of her claims against Ms. Brooks-Worrell.  (*Id.* at 1.)  Ms. Brooks-Worrell argues that

17   Ms. Mansfield should have labeled this document as a motion and sought the court's

18   _____

19        [9] The second amended complaint, upon which this dismissal is supposed to operate, does
     not contain any state common law claims against Dr. Palmer.  (*See* 2d Am. Compl. ¶¶ 23-35.)
20   Instead, the only claim it expressly asserts against Dr. Palmer is Ms. Mansfield's First
     Amendment retaliation claim.  (*See id.* ¶ 33.)  The complaint mentions Dr. Palmer in the context
21   of the civil conspiracy claim but alleges only that he acted outside the scope of his employment,
     not that he participated in the conspiracy.  (*See id.* ¶¶ 30-31.)  At oral argument, counsel for Ms.
22   Mansfield represented that Ms. Mansfield does not intend to assert any common law claims
     against Dr. Palmer in her second amended complaint.

1    leave because the University Defendants have already filed an answer to Ms. Mansfield's

2    first amended complaint as well as a motion for summary judgment.  (Reply at 4 n.1.)

3    Ms. Mansfield disclaims the need for approval on the ground that Defendants have not

4    answered her second amended complaint or, according to her, filed a motion for

5    summary judgment.[10]  (Not. of Dis. at 1-2 n.1.)  No party has cited any authority

6    regarding the effect of an answer to a previous complaint on the plaintiff's right to

7    unilateral dismissal under Federal Rule of Civil Procedure 41, and no defendant has

8    meaningfully addressed Ms. Mansfield's argument regarding the motion for summary

9    judgment.

10          The court declines to render a decision on those issues because it finds that Ms.

11   Mansfield is entitled to dismiss her claims against Ms. Brooks-Worrell and any common

12   law claims she may have against Dr. Palmer even if she requires court approval.  When

13   presented with a motion to voluntarily dismiss, the court "must determine whether the

14   defendant will suffer some plain legal prejudice as a result of dismissal."  *Westlands*

15   *Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996); *see also* Fed. R. Civ. P.

16   _____

17         [10] In fact, Ms. Mansfield is ambivalent regarding her need for court approval.  Although
     she labeled her docket entry a "notice," not a motion, the header of the document reads "Notice
18   and Motion for Voluntary Dismissal."  (*See* Dkt.; Not. of Dis. at 1.)  Furthermore, the document
     "requests an Order of Voluntary Dismissal" and states that the relevant claims should be
19   dismissed "[w]hether by court order or without court order."  (Not. of Dis. at 1, 3.)  If in the
     future Ms. Mansfield and her counsel find themselves unsure of whether they require court
20   approval for a particular action, the court advises them to err on the side of caution and file their
     request as a motion.  This tactic is particularly prudent where, as here, persuasive authority
21   suggests that the request at issue requires court approval, at least on the basis of the University
     Defendants' prior answer.  *See Aana v. Pioneer Hi-Bred Int'l, Inc.*, Nos. 12-00231 LEK-BMK,
22   12-00665 LEK-BMK, 2014 WL 819158, at *2-3 (D. Haw. Feb. 28, 2014) (citing *Armstrong v.
     Frostie Co.*, 453 F.2d 914, 916 (4th Cir. 1971)).

41(a)(2).  Plain legal prejudice generally concerns "the rights and defenses available to a

defendant in future litigation."  *Westlands Water Dist.*, 100 F.3d at 97 ("For example, . . .

courts have examined whether a dismissal without prejudice would result in the loss of a

federal forum, or the right to a jury trial, or a statute-of-limitations defense.").  Here,

substituted Defendant United States does not oppose dismissal, and no defendant will

suffer "plain legal prejudice" as a result of dismissal.  Accordingly, all claims against Ms.

Brooks-Worrell and any state common law claims against Dr. Palmer are dismissed with

prejudice.

**C.   Ms. Mansfield's Motion for Leave to File a Third Amended Complaint**

Ms. Mansfield moved for leave to file a third amended complaint six days after

Defendants filed their motion raising the anti-SLAPP and statute of limitations issues.

(*See* Mot. to Am.; *see generally* Dkt.)  In her proposed third amended complaint, Ms.

Mansfield removes all mention of Defendants' communications to the VA police and

instead emphasizes their communications with VA and UW administrators.[11]  (Mot. to

Am. at 2, 3 n.2; Proposed 3d Am. Compl. ¶¶ 19-22, 24, 30.)

Federal Rule of Civil Procedure 15(a) provides that, after an initial period for

amendments as of right, pleadings may be amended only with the opposing party's

written consent or by leave of the court.  Fed. R. Civ. P. 15(a).  Generally, "the court

should freely give leave [to amend pleadings] when justice so requires."  Fed. R. Civ. P.

---

[11] The proposed third amended complaint also removes all reference to Ms. Brooks-Worrell in keeping with Ms. Mansfield's motion to voluntary dismiss Ms. Brooks-Worrell.  (*See* Mot. to Am. at 2.)

15(a)(2).  This rule should be interpreted and applied with "extreme liberality."  *Morongo*

*Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Federal policy

favors freely allowing amendment so that cases may be decided on their merits.  *See*

*Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997).

The court ordinarily considers five factors when determining whether to grant

leave to amend:  "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4)

futility of amendment," and (5) whether the pleadings have previously been amended.

*Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  The court need not

consider all of these factors in each case.  *Atkins v. Astrue*, No. C 10-0180 PJH, 2011 WL

1335607, at *3 (N.D. Cal. Apr. 7, 2011).  The third factor, however, prejudice to the

opposing party, is the "touchstone of the inquiry under rule 15(a)."  *Eminence Capital,*

*LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In conducting this five-factor analysis, the court must grant all inferences in favor

of allowing amendment.  *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir.

1999).  In addition, the court must be mindful of the fact that, for each of these factors,

the party opposing amendment has the burden of showing that amendment is not

warranted.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also*

*Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).  With these points in

mind, the court analyzes each of the relevant factors.

1. Bad Faith

The first factor is bad faith.  In the context of a motion for leave to amend, "bad

faith" means acting with intent to deceive, harass, mislead, delay, or disrupt.  *Cf. Leon v.*

1   *IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *In re Ezzell*, 438 B.R. 108, 117-18

2   (Bkrtcy. S.D. Tex. 2010).  As it has been defined in other contexts, "bad faith" means

3   more than acting with bad judgment or negligence, but "rather it implies the conscious

4   doing of a wrong because of dishonest purpose or moral obliquity. . . .  [I]t contemplates

5   a state of mind affirmatively operating with furtive design or ill will."  *United States v.*

6   *Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003).

7        Here, this factor favors allowing amendment.  Nothing in the record suggests that

8   Ms. Mansfield is acting in bad faith.  There is no evidence of "conscious doing of a

9   wrong . . . , dishonest purpose or moral obliquity . . . , [or] furtive design or ill will."  *See*

10  *id.*  Although Ms. Mansfield filed her motion for leave to amend after Ms. Brooks-

11  Worrell warned her about the anti-SLAPP issue, waited for her to amend, and then filed

12  an anti-SLAPP motion (*see supra* Part I.B),  Ms. Mansfield's delay alone does not

13  amount to bad faith.  This is particularly true in light of the fact that the court must

14  indulge all inferences in favor of allowing amendment and must therefore impute benign

15  motives to Ms. Mansfield where, as here, it is plausible to do so.  *See Griggs*, 170 F.3d at

16  880.

17        2.  Undue Delay

18        The second factor is undue delay.  "Undue delay" is delay that prejudices the

19  nonmoving party or imposes unwarranted burdens on the court.  *Davis v. Powell*, --- F.

20  Supp. 2d ----, 2012 WL 4754688, at \*9 (S.D. Cal. 2012).  In assessing whether there is

21  undue delay, it is not sufficient merely to ask whether the motion to amend complies with

22  the court's scheduling order.  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d

1   946, 953 (9th Cir. 2006).  Instead, a district court must inquire whether the moving party

2   knew or should have known the facts and theories raised by the amendment at the time of

3   the original pleading, *id.*, although the fact that a party could have amended a complaint

4   earlier does not in itself constitute an adequate basis for denying leave to amend.  *Howey*

5   *v. United States,* 481 F.2d 1187, 1191 (9th Cir. 1973).  Whether there has been "undue

6   delay" should be considered in the context of (1) the length of the delay measured from

7   the time the moving party obtained relevant facts; (2) whether discovery has closed; and

8   (3) proximity to the trial date.  *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir.

9   1991).

10          This factor is neutral with respect to amendment.  Although Ms. Mansfield

11   delayed several weeks after being warned about the anti-SLAPP issue (*see supra* Part

12   I.B), that delay is not substantial in the context of the case schedule.  Trial is over 10

13   months away, and the deadline for amended pleadings is more than four months in the

14   future.  (*See* Sched. Ord. (Dkt. # 47).)  On the other hand, the anti-SLAPP Defendants

15   have endured some prejudice.  Because Ms. Mansfield failed to respond to their warning

16   for three weeks, the anti-SLAPP Defendants undertook the expense of preparing and

17   filing the joint anti-SLAPP motions.  (*See supra* Part I.B; Reply at 7.)

18          3.  Prejudice to the Opposing Party

19          The next factor is prejudice.  "Prejudice," in the context of a motion to amend,

20   means "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or

21   theories on the part of the other party."  *Deakyne v. Cmmsrs. of Lewes*, 416 F.2d 290, 300

22   (3d Cir. 1969); *Amersham Pharacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644,

1    648 (N.D. Cal. 2000).  The prejudice inquiry carries the "greatest weight" among the five

2    factors.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

3    Even so, "[t]he party opposing amendment bears the burden of showing prejudice."

4    *DCD Programs*, 833 F.2d at 186.  The non-moving party must do more than merely

5    assert prejudice; "'it must show that it was unfairly disadvantaged or deprived of the

6    opportunity to present facts or evidence which it would have offered had

7    the . . . amendments been timely.'"  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.

8    1989).  As a corollary, delay alone is not sufficient to establish prejudice, nor is a need

9    for additional discovery.  *Amersham*, 190 F.R.D. at 648; *In re Circuit Breaker Litig.*, 175

10   F.R.D. 547, 551 (C.D. Cal. 1997).  To justify denying leave to amend, the prejudice to

11   the non-moving party must be "substantial."  *Morongo Band*, 893 F.2d at 1079.

12          This factor favors allowing amendment.  Although the anti-SLAPP Defendants

13   went to the expense of filing the joint anti-SLAPP motions, that expense is relatively

14   minor with respect to the remaining anti-SLAPP Defendants, Ms. Jones-Pfaff and Ms.

15   Reichow.  Ms. Jones-Pfaff and Ms. Reichow filed only a cursory joinder in Ms. Brooks-

16   Worrell's motion and a brief reply in joinder.  (*See generally* Joinder; Reply in Joinder.)

17   Furthermore, no defendant has demonstrated that it will be "unfairly disadvantaged or

18   deprived of the opportunity to present facts or evidence," *Bechtel*, 866 F.3d at 652, or

19   will suffer undue difficulty in defending against Ms. Mansfield's lawsuit, *Deakyne*, 416

20   F.2d at 300.

21   //

22   //

ORDER- 21

### 4.  Futility of Amendment

The fourth factor is whether amendment would be futile.  A court may deny leave to amend if the proposed amendment is futile or would be subject to dismissal.  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).  For purposes of this analysis, an amendment is "futile" if it is clear that the complaint could not be saved by amendment.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Specifically, the court must determine whether the deficiencies in the pleadings "can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint."  *Id.* (quotation marks omitted).  "A party should be afforded an opportunity to test his claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended pleading would be subject to dismissal."  *Mahone v. Pierce Cnty.*, No. C10-5847 RBL/KLS, 2011 WL 2009740, at *2 (W.D. Wash. May 23, 2011) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 629 (9th Cir. 1991)).

This factor favors amendment.  Defendants do not address this factor at length; however, they briefly assert that the proposed third amended complaint remains subject to dismissal on the basis of the anti-SLAPP statute, RCW 4.24.510.  (*See* Reply at 4 n.2; Reply in Joinder at 3.)  That is, they contend that their statements to HR administrators with UW and the VA constitute communications to government agencies on matters reasonably of concern to those agencies.  (*See* Reply at 4 n.2; Reply in Joinder at 3); RCW 4.24.510.  The court finds, however, that it is not beyond doubt that the proposed

1  third amended complaint would be subject to dismissal.  *See Mahone*, 2011 WL 2009740,

2  at *2.

3       Defendants provide a single citation to support their position regarding the

4  applicability of RCW 4.24.510 to the proposed third amended complaint—*Bailey v.*

5  *State*, 191 P.3d 1285 (Wash. Ct. App. 2008).  (*See* Reply at 4 n.2.)  In that case, the

6  Washington Court of Appeals applied RCW 4.24.510 to a suit by a former Eastern

7  Washington University ("EWU") professor against the wife of another faculty member

8  who reported the professor to EWU officials.  *See Bailey*, 191 P.3d at 1287-89.  *Bailey*

9  shares several similarities with this case as it would exist under the proposed third

10  amended complaint.  It involved claims by a former agency employee that were based on

11  communications made to agency administrators regarding the plaintiff's job-related

12  misconduct.  *See id.*  At first glance, then, *Bailey* appears to make the proposed third

13  amended complaint subject to dismissal.

14       Nevertheless, a critical difference exists between *Bailey* and this case.   In *Bailey*,

15  the communications came from outside EWU, *id.* at 1287, whereas here the

16  communications came from other agency employees (Mot. at 3-4; Joinder at 2-3; 2d Am.

17  Compl. ¶¶ 4-8, 19-21; Proposed 3d Am. Compl. ¶¶ 4-6, 8, 19-22, 24, 30).  The

18  Washington Supreme Court has held that agencies are not "persons" eligible for

19  immunity under RCW 4.24.510 510, *Segaline*, 238 P.3d at 1113, and the Ninth Circuit

20  and one district court have extended that holding to agency employees, *Eklund*, 410 Fed.

21  App'x at *14-15; *Tracy*, 2010 WL 5395029, at *5.   The court need not decide here

22  whether *Segaline*, *Eklund*, and *Tracy* render RCW 4.24.510 inapplicable to the proposed

1    third amended complaint. However, those cases at least require the conclusion that the

2    proposed third amended complaint is not clearly subject to dismissal on the basis of RCW

3    4.24.510. Moreover, the anti-SLAPP Defendants have not identified, and the court is not

4    aware of, an independent basis that would clearly mandate dismissal at this time. *See*

5    *Mahone*, 2011 WL 2009740, at *2. Thus, the court cannot say that the proposed

6    amendment would be futile.[12]

7        *5.* Previous Amendments

8        A court may also consider whether the moving party has had previous

9    opportunities to amend its pleadings. A district court's discretion to deny amendment is

10   especially broad when the court has already given a plaintiff one or more opportunities to

11   amend. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *Mir. v.*

12   *Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). This factor weighs in favor of denying

13   amendment. Ms. Mansfield has already amended her complaint twice, once in state court

14   and once in federal court. (*See* 1st Am. Compl; 2d Am. Compl.)

15       Having considered the factors relevant to a motion to amend, the court finds that

16   on balance they favor allowing amendment in this instance. Three factors favor

17   amendment, one factor is neutral, and only one factor weighs against amendment.

18   _____

19       [12] In addition, the United States is currently the only party defendant subject to Ms.
     Mansfield's common law claims, *see supra* Part II.A, and the United States is undoubtedly not a
     "person" under RCW 4.24.510, *see Segaline*, 238 P.3d at 1113. Therefore, even if the court

20   were to find that RCW 4.24.510 applies to the statements in the proposed third amended
     complaint, that conclusion would make the proposed third amended complaint subject to

21   dismissal only if Ms. Mansfield successfully challenged the United States' scope-of-employment
     certification and the court re-substituted Ms. Jones-Pfaff and Ms. Reichow as party defendants.
     Defendants' futility argument therefore fails for the additional reason that a successful

22   certification challenge by Ms. Mansfield is not a certainty.

1    Accordingly, the court grants Ms. Mansfield's motion for leave to file a third amended

2    complaint.

3         As stated at oral argument, however, the court does not look fondly on Ms.

4    Mansfield's repeated use of amendment to avoid defense motions.  Therefore, the court

5    will closely analyze any further attempts by Ms. Mansfield to amend her complaint.  If

6    the court finds that Ms. Mansfield is using amendment to avoid a defense motion or for a

7    similar tactical purpose, the court will deny leave to amend on the basis of Ms.

8    Mansfield's bad faith.

9    **D.    Defendants' Motion for Partial Summary Judgment**

10        The University Defendants have moved for partial summary judgment, and Ms.

11   Reichow has joined in the motion.[13]  (*See* Mot. at 12-18; Joinder at 3.)  However, Ms.

12   Brooks-Worrell and UW have been dismissed, *see supra* Part II.B.1; (Dkt. # 56), and Ms.

13   Reichow is not presently a party defendant in this action, *see supra* Part II.A.2.

14   //

---

16   [13] In the reply in joinder to this motion, Ms. Jones-Pfaff interjects a new argument—that
     Ms. Mansfield's negligent infliction of emotional distress claim against Ms. Jones-Pfaff is in fact
17   an assault claim in disguise, and is therefore time barred.  (*See* Reply in Joinder at 8.)  New
     issues and evidence may not be raised in reply briefs.  *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120
18   (9th Cir. 1996).  When a party raises new material in a reply brief, the court has discretion to
     strike that material.  *See, e.g., Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 (9th Cir. 1993).  Ms.
     Jones-Pfaff admits that this argument is "perhaps not clearly addressed in Pfaff-Jones's initial
19   joinder."  (Reply in Joinder at 8.)  That is an understatement.  In fact, Ms. Jones-Pfaff does not
     even join in the motion for partial summary judgment (*see* Joinder at 2-3), and no other
20   defendant raises this argument on her behalf (*see* Mot. at 12-18; Joinder at 3).  Moreover, Ms.
     Jones-Pfaff is not currently a party defendant in this action.  *See supra* Part II.A.2.  The court
21   therefore strikes Ms. Jones-Pfaff's improperly raised argument (Reply in Joinder at 8 (first full
     paragraph)).  The court expresses no opinion on the validity or timeliness of Ms. Mansfield's
22   negligent infliction of emotional distress claim.

ORDER- 25

1   //

2   Therefore, the remaining movants are Ms. Fletcher and Dr. Palmer[14] ("the Limitations

3   Defendants").  The Limitations Defendants argue that any claims premised on events that

4   occurred before May 16, 2011, are barred by the combined effect of the statute of

5   limitations and Federal Rule of Civil Procedure 15(c)(1)(C).  (*See* Mot. at 12-18.)

6   Specifically, they argue that Ms. Mansfield's claims against them must be judged for

7   statute of limitations purposes from the date on which she filed her first amended

8   complaint.  (Mot. at 14-16.)  Given that premise, the Limitations Defendants conclude

9   that the statute of limitations has run on some of Ms. Mansfield's claims against them.

10  (Mot. at 16-18.)

11       This motion presents two questions:  First, do Ms. Mansfield's claims against the

12  Limitations Defendants relate back to the original complaint, or must the court judge

13  them as of the date Ms. Mansfield filed claims against the Limitations Defendants?

14  Second, if Ms. Mansfield's claims against the Limitations Defendants do not relate back,

15  does a statute of limitations bar any of those claims?  Before reaching those questions, the

16  court will briefly discuss the familiar summary judgment framework.

17       1.  Summary judgment standard

18       Summary judgment is appropriate if the evidence, when viewed in the light most

19  favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

20  _____

21  [14] The United States has partially substituted for Dr. Palmer (*see* Not. of Sub. & Cert. 1);
    however, because Dr. Palmer is still a party defendant in his capacity as a UW employee (*see*
22  *id.*), the court will consider him as a movant under this motion.

1   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

2   P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

3   477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of

4   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is

5   "genuine" if the evidence is such that reasonable persons could disagree about whether

6   the facts claimed by the moving party are true.  *Aydin Corp. v. Loral Corp.*, 718 F.2d

7   897, 902 (9th Cir. 1983).

8          The court is "required to view the facts and draw reasonable inferences in the light

9   most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

10   The court may not weigh evidence or make credibility determinations in analyzing a

11   motion for summary judgment because these are "jury functions, not those of a judge."

12   *Anderson*, 477 U.S. at 249-50.

13          The moving party bears the initial burden of showing there is no genuine issue of

14   material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S.

15   at 323.  If the moving party meets his or her burden, the non-moving party "must make a

16   showing sufficient to establish a genuine dispute of material fact regarding the existence

17   of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.

18          2.  <u>Relation back</u>

19          Rule 15(c)(1)(C) governs relation back of amended pleadings that add a party or

20   change the name of a party.  Fed. R. Civ. P. 15(c)(1)(C).  Such an amendment relates

21   back to the date of the original pleading if, among other requirements, within 120 days of

22   the filing of the original complaint, the party to be added "knew or should have known

1    that the action would have been brought against it, but for a mistake concerning the

2    proper party's identity." *Id.*; *see also* Fed. R. Civ. P. 4(m).  In other words, a claim

3    against a new defendant relates back to the original complaint only if (1) the plaintiff

4    failed to include that defendant in the original complaint due to a mistake concerning that

5    defendant's identity, and (2) the defendant knew or should have known of that mistake

6    within 120 days of the filing of the original complaint.  *See Louisiana-Pacific Corp. v.*

7    *ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993).  If the claims against the new defendant

8    do not relate back, the court judges those claims as of the date they were filed for statute

9    of limitations purposes.  *See id.* at 433-34.

10           In her original complaint, Ms. Mansfield named only Ms. Jones-Pfaff.  (State Ct.

11   Rec. at 5.)  Ms. Fletcher and Dr. Palmer appear as Defendants only in Ms. Mansfield's

12   first amended complaint.  (*See* 1st Am. Compl.)  Ms. Mansfield filed her original

13   complaint on March 10, 2014 (State Ct. Rec. at 5), and her first amended complaint on

14   May 16, 2014 (1st Am. Compl.).  The Limitations Defendants argue that the claims

15   against them in the first amended complaint cannot relate back to the original complaint

16   because Ms. Mansfield was not mistaken as to their identities when she filed her original

17   complaint.  (Mot. at 14-16.)  They contend that Ms. Mansfield knew their identities but

18   simply chose not to include them in the first amended complaint; therefore, she filed her

19   claims against them on May 16, 2014, for statute of limitations purposes.  (*See* Mot. at

20   16.)

21           The court agrees.  Ms. Mansfield worked on the same research team with Dr.

22   Palmer (*see* 2d Am. Compl. ¶¶ 5, 10; Proposed 3d Am. Compl. ¶¶ 5, 10), and Ms.

1    Mansfield received notice of the termination of her UW employment from Ms. Fletcher

2    (2d Am. Compl. ¶¶ 8, 21; Proposed 3d Am. Compl. ¶¶ 8, 21; Resp. at 17; Fletcher Decl.

3    (Dkt. # 41) ¶ 7).  Ms. Mansfield does not claim that at the time she filed her original

4    complaint she was unaware of the Limitations Defendants' identities or their roles in the

5    events underlying this lawsuit.  (*See* Resp. at 17-18.)  Furthermore, nothing in her

6    original complaint suggests that she intended to sue the Limitations Defendants but was

7    mistaken as to their identities.  Similarly, nothing shows that the Limitations Defendants

8    should have known that they were intended targets of Ms. Mansfield's original

9    complaint.  As such, no genuine dispute of material fact exists on this issue.  The court

10   finds that Ms. Mansfield omitted Dr. Palmer and Ms. Fletcher from her original

11   complaint by choice.  Therefore, her claims against them do not relate back to her

12   original complaint.  *See ASARCO*, 5 F.3d at 433-34.

13        3.  Statute of limitations

14        Ms. Mansfield asserts claims against Ms. Fletcher and Dr. Palmer under 42

15   U.S.C. § 1983.  (*See* 2d Am. Compl. ¶¶ 33-35; 3d Am. Compl. ¶¶ 33-35.)  "Actions

16   brought pursuant to 42 U.S.C § 1983 are governed by state statutes of limitations for

17   personal injury actions." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir.

18   2000).  The three-year statute of limitations for personal injury actions set forth in RCW

19   4.16.080(2) applies to Section 1983 actions filed in Washington. *RK Ventures, Inc. v.

20   City of Seattle*, 307 F.3d 1049, 1058 (9th Cir. 2002).  Ms. Mansfield filed her claims

21   against Dr. Palmer and Ms. Fletcher on May 16, 2014 (*see* 1st Am. Compl.); therefore,

22   those claims are timely if they accrued after May 15, 2011.

ORDER- 29

1    "Although state law determines the length of the limitations period, federal law

2    determines when a civil rights claim accrues." *Morales*, 214 F.3d at 1153-54 (citing

3    *Tworivers v. Lewis*, 174 F.3d 987, 991(9th Cir. 1999)).  "Under federal law, a claim

4    accrues when the plaintiff knows or has reason to know of the injury which is the basis of

5    the action." *Tworivers*, 174 F.3d at 991.  The question, then, is whether Ms. Mansfield

6    knew or had reason to know of the injury or injuries of which she complains before May

7    16, 2011.  *See Morales*, 214 F.3d at 1154.

8        The principal injury of which Ms. Mansfield complains is the termination of her

9    UW employment, allegedly in retaliation for exercising her First Amendment rights.  (*See*

10   2d Am. Compl. ¶ 34; Proposed 3d Am. Compl. ¶ 34; Resp. at 17-18.)  Ms. Mansfield

11   received notice of her termination in a letter dated July 5, 2011, well after the May 15,

12   2011, limitations cutoff.  (*See* Fletcher Decl. ¶ 7, at 13.)  As such, Ms. Mansfield's

13   Section 1983 claims are timely to the extent they are based on the termination of her UW

14   employment.  *See McKee v. Peoria Unified Sch. Dist.*, 963 F. Supp. 2d 911, 922 (D. Ariz.

15   2013) ("In an employment-related § 1983 action, the [statute of limitations] begin[s] to

16   run from the time the plaintiff 'learns of the "actual injury," i.e., an adverse employment

17   action, and not when the plaintiff suspects a "legal wrong," i.e., that the employer acted

18   with discriminatory intent.'") (quoting *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th

19   Cir. 2010)).  At oral argument, counsel for Ms. Mansfield assured the court that Ms.

20   Mansfield is not asserting claims based on injuries that occurred before her termination.

21   Nevertheless, for the sake of clarity and to narrow the issues going forward, the court

22   finds that the statute of limitations bars any claims based on injuries occurring before

ORDER- 30

1   May 16, 2011. Such injuries might constitute evidence relevant to a timely claim;

2   however, they cannot form the basis of a distinct cause of action.

3        Accordingly, the court grants the motion for partial summary judgment insofar as

4   it addresses distinct causes of action based on pre-May 16, 2011, injuries. The court

5   denies the motion for partial summary judgment insofar as it relates to injuries that

6   occurred on or after May 16, 2011.

7   **E.    Ms. Mansfield's Motion for a Continuance**

8        The remaining motion before the court is Ms. Mansfield's motion for a

9   continuance pursuant to Federal Rule of Civil Procedure 56(d). Ms. Mansfield requests

10  that the court postpone ruling on Defendants' motions until she has had an opportunity to

11  conduct additional discovery. (Mot. to Cont. at 12.) She asserts that she requires further

12  discovery to overcome Defendants' anti-SLAPP and statute of limitations arguments.

13  (*Id.*)

14       In light of the court's prior rulings, Ms. Mansfield's motion is moot. The court

15  has denied the anti-SLAPP motion. *See supra* Part II.A.2. In addition, the court has

16  denied the motion for partial summary judgment with respect to injuries that occurred

17  after May 15, 2011, *see supra* Part II.D.3, and counsel for Ms. Mansfield asserted at oral

18  argument that Ms. Mansfield has no claims based on injuries that occurred before May

19  16, 2011. Therefore, the court denies as moot Ms. Mansfield's motion for a continuance.

20              **III.    CONCLUSION**

21       For the foregoing reasons, the court DENIES the joint anti-SLAPP motion (Dkt.

22  ## 40, 43); GRANTS Ms. Mansfield's motion to dismiss (Dkt. # 46); GRANTS Ms.

1  Mansfield's motion for leave to file a third amended complaint (Dkt. # 48); GRANTS in

2  part and DENIES in part the motion for partial summary judgment (Dkt. ## 40, 43); and

3  DENIES as moot Ms. Mansfield's motion for a continuance under Rule 56(d) (Dkt.

4  # 49).  All claims against Ms. Brooks-Worrell and any common law claims against Dr.

5  Palmer are DISMISSED WITH PREJUDICE.  In addition, the court ORDERS as

6  follows:

7        (1) If Ms. Mansfield wishes to challenge the United States' scope-of-employment

8             certification, she must do so in a motion filed no later than three (3) months

9             from the date of this order;

10       (2) Ms. Mansfield shall note that motion as a fourth-Friday motion pursuant to

11            Local Rule LCR 7(d)(3); and

12       (3) Ms. Mansfield and the United States may conduct discovery relevant to

13            preparing for that motion.

14  Dated this 15th day of December, 2014.

15

16

17  _____

18  JAMES L. ROBART
    United States District Judge

19

20

21

22

ORDER- 32